## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                     No. CR 10-2318 JB

PAUL CONRAD WARD,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum and Request for Approval of Plea Agreement Pursuant to F.R.C.P. 11(c)(1)(C), filed June 20, 2011 (Doc. 33). The Court held a hearing on July 1, 2011. The primary issues are: (i) whether the Court should apply the 2-level enhancement under U.S.S.G. § 3B1.3; and (ii) whether the Court should accept the plea agreement, impose a 21-month sentence, and award full restitution of $530,000.00 to the victim -- Irene Randall. Because the Court is satisfied that the agreed-upon sentence of 21 months and full restitution to Randall varies from the advisory guideline range for justifiable reasons, the Court will overrule Ward's objection to the enhancement of 2 levels for abuse of position of trust or use of special skill, but will grant Defendant Paul Conrad Ward's request that the Court accept the plea agreement and impose the agreed-upon sentence.

## FACTUAL BACKGROUND

Ward is a member of the California State Bar. See Presentence Investigation Report ¶ 87, at 22 (disclosed May 26, 2011)("PSR"). Ward and Randall met through Paul Ghera. Randall told Ghera that she wanted to diversify and was interested in real estate. See PSR ¶ 8, at 4. Ghera told

Randall that he knew a lawyer, Ward, who could protect her interests in any investment.  See PSR ¶ 8, at 4.  Ghera set up a conference call between Ward and Randall.  See PSR ¶ 8, at 4.  Ward tried to get Randall interested in a trade program in the country of Spain, which he said would pay huge returns.  See PSR ¶ 8, at 4.  Randall retained Ward as her attorney, although she never paid Ward or gave him a retainer.  See PSR ¶ 9, at 4.  Randall asked Ward to review contracts and perform due diligence on a potential agreement she had with a merchant bank.  See PSR ¶ 9, at 4.  Ward reviewed the bank's proposals and told Randall he could provide her a better deal than the banks could.  See PSR ¶ 9, at 4.  Ward told Randall that the credit facility with which she was dealing was offering excessive interest and told her that deal was a scam, but that she was safe with him.  See PSR ¶ 9, at 4.  Ward told Randall that, if she wired him $500,000.00 by a certain date, he would invest her money in a trade program returning fifteen percent a week and establish three lines of credit for her.  See PSR ¶ 9, at 4-5.  Ward told Randall that she did not have to pay for his legal services, as he considered his legal services to be part of the investment.  See PSR ¶ 9, at 5.  On September 7, 2007, Randall wired Ward $500,000.00 to invest.  See PSR ¶ 9, at 5.  Ward did not invest the funds as agreed.  See PSR ¶ 7, at 4.  He instead diverted the $500,000.00 to himself and others.  See PSR ¶ 7, at 4.  There was never an investment and, therefore, no return.  See PSR ¶ 7, at 4.  Randall lost $500,000.00.  See PSR ¶ 7, at 4.

## PROCEDURAL HISTORY

On February 24, 2011, a federal grand jury returned a Superseding Indictment, charging Ward with five counts of a violation of 18 U.S.C. §§ 1343 and 2(a) -- Wire Fraud and Aiding and Abetting -- and a violation of 18 U.S.C. §§ 981 and 982 -- Forfeiture.  See Doc. 22.  On March 31, 2011, Ward entered into a plea agreement, in which he pled guilty to Count 1 of the Superseding Indictment -- a violation of 18 U.S.C. § 1343.  See Doc. 30.

On May 26, 2011, the United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR"). The PSR calculates Ward's adjusted offense level as 23, and his total offense level after a 3-level reduction for acceptance of responsibility as 20. In calculating Ward's offense level, the PSR applied a 2-level enhancement pursuant to U.S.S.G. § 3B1.3, which states: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by **2** levels." U.S.S.G. § 3B1.3 (bold in original). The PSR states:

> The defendant was introduced to . . . Randall as an attorney. She entrusted the defendant with her money, as he agreed to look over some banking investment contracts for her. After reviewing the contracts, the defendant informed . . . Randall that he could get her a better return for her money. Although . . . Randall never paid a retainer for . . . Ward as her attorney, she reports that . . . Ward advised his attorney services were part of what comes with her investing with him. . . . Randall believed she and Ward had a fiduciary relationship and trusted . . . Ward, because he was an attorney. Therefore an increase of two levels should be applied.

PSR ¶ 52, at 17. The PSR calculates Ward's criminal history category as I. A offense level of 20 and a criminal history category of I establishes a guideline sentencing range of 33 to 41 months.

On June 20, 2011, Ward filed the Defendant's Sentencing Memorandum and Request for Approval of Plea Agreement Pursuant to F.R.C.P. 11(c)(1)(C). See Doc. 33. Ward argues that the 21-month stipulated sentence, which also requires an order of full restitution, a five-year period of supervised release, and a significant partial payment of restitution at the time of sentencing, is reasonable, consistent with the factors 18 U.S.C. § 3553(a) sets forth, and best facilitates the goal of in-full repayment to Randall. Ward does not significantly dispute the facts the PSR sets forth, but states that, contrary to some facts asserted within the PSR, Ward never served as Randall's attorney and that Randall at no time sought him out as the hired protector of her portfolio. He argues that Randall at no time retained or hired Ward. He argues that, although, as a lawyer, he inherently

caries an aura of trustworthiness, simple status as a lawyer does not automatically result in the application of the abuse-of-trust enhancement.  Ward notes, however, that the impact of the enhancement does not alter the plea agreement or stipulated sentence.

On June 24, 2011, the USPO disclosed the Addendum to the PSR.  The Addendum states that there were no formal objections to the PSR and that no facts were significantly disputed, but recognizes that Ward disagreed and objected to the PSR where it referred to Randall hiring Ward and employing him as her attorney, and to the related 2-level enhancement that was applied to Ward because of him being in a position of trust.  The 2-level enhancement, however, does not alter the plea agreement or stipulated sentence.  The Addendum states that the 2-level enhancement was properly applied, because Ward was introduced to Randall as an attorney, and because Ward agreed to look over Randall's prospective investments and provide her with his legal and professional opinion.  The Addendum states that, based on the information Ward provided to Randall and the fact that he was an attorney, she invested $500,000.00 with him.  The Addendum states that, although Randall never paid Ward a retainer for his legal services, she believed she and Ward had a fiduciary relationship and trusted Ward.

At the hearing, the Court asked Ward's counsel, Miles Hanisee, whether "there [was] any issue in dispute" with the PSR.  Transcript of Hearing at 2:16 (taken July 1, 2011)(Court)("Tr.").[1]

> MR. HANISEE: I would say no to that.  We have filed a sentencing memorandum. It's document 33.  The nature of this agreement means we don't need to litigate. . . .  We've got a factual objection to the identified enhancement but it's not something that we consider to be significant, Your Honor, and I wrote about that in my sentencing mem[o] . . . which I hope the Court has read.
>
> THE COURT:  And if I'm inclined to grant -- to accept the plea agreement, it would

---

[1] The Court's citations to the transcript are to the Court Reporter's original, unedited version. Any final version may have slightly different line or page numbers.

be acceptable to you to overrule any objection to the presentence report.

  MR. HANISEE:  It would be, Your Honor.

Tr. at 2:17-3:3 (Court, Hanisee).  Mr. Hanisee stated:

> Your Honor, since the Court expressed an inclination to accept the agreement, I really don't need to get into, you know, the issue of abuse of a position of trust is I understand it's more than simply whether there was an attorney-client relationship, but it's something we raised but I frankly feel it's completely secondary to the more important components of this sentencing hearing and that is this Court's acceptance of it and the initial payment to Ms. Randall.

Tr. at 9:1-5 (Hanisee).  Regarding the abuse-of-trust enhancement, the United States stated:

> MR. KRAEHE:  Your Honor, I'd ask the Court to overrule any objections to that. I think it's ever important that the Court find that to there was an abuse of trust that Mr. Ward was acting in his capacity as an attorney  when these events transpired. That may be important for the California bar and it's just an important fact.

> THE COURT: [W]hat would what would be the strongest evidence for finding that he did act in his capacity as an attorney in dealing with Ms. Randall?

> MR. KRAEHE:  He represented himself, Your Honor, to be an attorney to Mrs. Randall and agreed to reduce her business transactions in his capacity as an attorney. And that was certainly Mrs. Ran[dall's] understanding.  And certainly Mrs. Randall believed in and trusted in Mr. Ward more because he was an attorney.  And in that regard, Your Honor, we b[elieve] he did abuse the trust that he was given by the state of California when they made him an attorney when they licensed him to be an attorney.  And . . . I don't think Mr. Ward should be an attorney anymore.  And I'd hate to see a sentence or any finding that somehow for some technical reason prevented the state bar of California from taking whatever action it deems necessary with respect to Mr. Ward.

Tr. at 10:18-11:16 (Court, Kraehe).

## LAW REGARDING U.S.S.G. § 3B1.3

U.S.S.G. § 3B1.3, entitled "Abuse of Position of Trust or Use of Special Skill" provides:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.  This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. If this adjustment is based upon an abuse of a position of trust, it may be employed

in addition to an adjustment under § 3B1.1 (Aggravating Role); if this adjustment is based solely on the use of a special skill, it may not be employed in addition to an adjustment under § 3B1.1 (Aggravating Role)
.

U.S.S.G. § 3B1.3.  Application Note 1 defines "Public or Private Trust" and explains that:

> "Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference).   Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.   For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult).   This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination.   This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. § 3B1.3 app. n.1.   Application note 4 defines "Special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing.  Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts."  U.S.S.G. § 3B1.3 app. n.4.   The United States must satisfy two elements to meet § 3B1.3, establishing: (i) the defendant possessed a special skill or a position of trust; and (ii) the defendant used that skill or abused that position to significantly facilitate the commission or concealment of the offense.   See United States v. Burt, 134 F.3d 997, 998-99 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit has explained that "position of trust is a bit of a misnomer.  It actually has little to do with trustworthiness and everything to do with authority and discretion."  Id. at 1154 (internal quotations omitted)(emphasis in the original).  Thus, "the lack of any authority to make substantial discretionary judgments is key in determining whether the enhancement applies."  United States v. Spear, 491 F.3d 1150, 1154 (10th Cir. 2007)(internal

quotations omitted).

Because U.S.S.G. §3B1.1 is concerned with persons abusing their lack of supervision to commit or conceal wrongdoing, "it is reserved for those with professional or managerial discretion." United States v. Spear, 491 F.3d at 1154.  That authority involves "substantial discretionary judgment."  Id. (emphasis in the original).  A sentencing court

> must undertake a functional analysis of job responsibilities and examine whether those duties were merely ministerial or were, in fact, managerial.  Indications of substantial discretionary judgment under the § 31B1.3 enhancement include the authority to engage in case-by-case decisionmaking, to set policies, and to grant exceptions to governing policies or protocols.  These factors are a [sic] nonexhaustive, and no one factor is dispositive of the analysis.

United States v. Spear, 491 F.3d at 1155.  Moreover, even if a defendant "occupies a position of trust," the court must "determine if the position was used in a manner that significantly facilitated the commission or concealment of the offense."  Id. at 1155 (internal quotations omitted).

In United States v. Spear, the Tenth Circuit determined that enhancement under § 1B1.3 was inappropriate.  The defendant,  a federal immigration employee responsible for intake of applications for changes in status, embezzled application fees by depositing the fees into her personal account. The Tenth Circuit found that "her theft was accomplished by being in the right place at the right time, i.e., opportunity and access, not by exercising the cloak of authority to stave off inquiry or decision-making power to cover her tracks."  491 F.3d at 1156-59.

In United States v. Edwards, 325 F.3d 1184 (10th Cir. 2003), the Tenth Circuit explained that the § 3B1.3 enhancement is not to be applied in every employee fraud or embezzlement case.  See 325 F.3d at 1187.  Thus, according to the Tenth Circuit in United States v. Edwards, that an employee "was trusted by her employer with significant responsibility -- even to the point of allowing her to bypass usual accounting controls and pick up customer checks from incoming mail

-- is not determinative."  325 F.3d at 1187.  The defendant in United States v. Edwards mostly handled accounts receivable and diverted customer payments into her boyfriend's account.  See 325 F.3d at 1185-86.  The enhancement was inapplicable to the defendant in United States v. Edwards, because her work was ministerial and clerical.  See 325 F.3d at 1185-86.  The Tenth Circuit rejected the United States' argument that the defendant had "alleged specialized accounting skills,  . . . minimal oversight, [and] . . . virtually exclusive control over the accounts receivable and customer billing records," and that she "use[d] . . .  her position to conceal [her offense]."  325 F.3d at 1187.

The Tenth Circuit has generally applied the § 3B1.3 enhancement in two categories of cases: "[I] where employees abuse their position within their own organization to take advantage of the employer, and [ii] where someone uses a fiduciary or personal trust relationship to perpetrate the charged offense against the beneficiary of the trust."  United States v. Evans, 44 F. App'x 449, 453 (10th Cir. 2002).  In United States v. Evans, the defendants ran an organization that recruited day-care providers to provide meals to underprivileged children. See 44 F. App'x at 450.  The Utah State Office of Education received federal funds, and dispensed them to the defendant's organization to cover overhead and administrative costs.  See 44 F. App'x at 451.  The organization was responsible for recruiting the providers and disbursing payment to them.  See 44 F. App'x at 451.  The defendants submitted fraudulent paperwork seeking reimbursements for meals not served or for providers no longer with the program, listed incorrect addresses for providers, and demanded that some providers give them kickbacks from reimbursement checks.  See 44 F. App'x at 451.  The Tenth Circuit held that enhancement under U.S.S.G.  §  3B1.3 was appropriate, because the defendants "exercised considerable control and maintained considerable independence, despite some regulatory oversight."  44 F. App'x at 453.  The Tenth Circuit noted that the providers were not given funds in advance to give meals to the children, but instead were reimbursed for meals

provided during the previous month.  See 44 F. App'x at 453.  "Defendants received the funds that they were to use to reimburse providers.  This placed defendants in a personal trust relationship with the providers, and the defendants' demands for kickbacks abused that trust and deprived the providers of reimbursement funds."  44 F. App'x at 453.

In United States v. Pappert, the Tenth Circuit found that the defendant had a position of trust with his customers, because he "gained a position of trust with respect to the customers that enabled him to conceal his fraud for long periods of time."  112 F.3d at 1080.  There is no "bright line between formal or informal fiduciary relationships, and run-of-the-mill commercial relationships."  United States v. Pappert, 112 F.3d at 1080.  The court must "carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity, and relationships in which the victim's trust is based on [the] defendant's position in the transaction."  Id. (internal quotations omitted).  In United States v. Pappert, the Tenth Circuit determined that the enhancement was applicable because:

> In isolation, each one of his lease agreements might appear to be a standard commercial transaction, executed at arm's length.  However, when [the defendant's] acts are considered in the aggregate, it appears that he created a position of trust . . . .  In this manner, by virtue of his role as middleman between customer and financing source, he gained a position of trust with respect to the customers that enabled him to conceal his fraud for long periods of time.

112 F.3d at 1080.  See United States v. Queen, 4 F.3d 925, 929 (10th Cir. 1993)(explaining that the defendant occupied a position of trust when he held himself out as an investment advisor/broker, because that position "is typically [filled by] an individual who is entrusted with the discretionary authority to manage the assets of his or her clients through the application of specialized knowledge.").

The enhancement is not authorized "when the elements of the underlying offense include

abuse of a position of trust."  As the Tenth Circuit explained in United States v. Chimal, 976 F.2d 608 (10th Cir. 1992):

> An ordinary bank teller, who steals from the till and adjusts the records, is not subject to the abuse of trust enhancement because the job is not considered a position of trust.  Unlike a bank teller, Defendant as comptroller held a position of trust.  She essentially had complete control over the accounting department and rarely had to report her activities to a superior.

976 F.3d at 613-14.  "[E]mbezzlement by definition involves an abuse of trust."  United States v. Chimal, 976 F.2d at 613, 613 n.5 ("Embezzlement involves the fraudulent appropriation to his own use or benefit, of property or money entrusted to [an individual] by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character.")(internal quotations omitted and alteration in the original).

In United States v. Burt, the United States Court of Appeals for the Tenth Circuit did not address whether knowledge of narcotics agents, surveillance techniques the agents used, and the methods the agents used to orchestrate controlled buys qualified as special skills, because "the use of those skills to significantly facilitate the commission or concealment of the offense, c[ould] not be met on the[ ] facts."  134 F.3d at 1000.  The Tenth Circuit stated: "There is no evidence in the record to support a finding that Defendant actually used his knowledge of narcotics detection techniques to significantly facilitate the concealment of his crime."  134 F.3d at 1000.  On the contrary, "the evidence in the record [was] that rather than attempting to conceal his crime, when law enforcement officers knocked at his door, he directed them to the garage to search his car for the cocaine."  134 F.3d at 1000.  The Tenth Circuit stated that it could not affirm a section 3B1.3 enhancement for use of a special skill "[w]ithout the requisite connection between the crime and Defendant's special knowledge."  134 F.3d at 1000.  The Tenth Circuit thus vacated the district court's sentence.  See 134 F.3d at 1000.

-10-

In <u>United States v. Atkin</u>, 107 F.3d 1213 (6th Cir. 1997), the United States Court of Appeals for the Sixth Circuit addressed Atkin's argument that "the district court erred in enhancing his sentence on Counts 1 through 9 based on a finding that he had used his skill as a lawyer to facilitate commission or concealment of the offense." 107 F.3d at 1219. Atkins was charged with obtaining money from a client -- Reuben Sturman -- "by falsely representing that he, Atkin, would bribe the United States District Judge presiding over Sturman's criminal case." 107 F.3d at 1215. The district court found

> that Sturman selected Atkin in his attempt to gain more favorable treatment not only because Atkin had a friendship with the district judge but also because Atkin was a lawyer. The district court also relied on testimony indicating that Atkin had asked the district judge "whether or not anything could be done for Mr. Sturman." Finally, the district court relied on testimony indicating that Atkin instructed Sturman to send the purported bribe money to Atkin's trust account.

107 F.3d at 1220. The Sixth Circuit concluded that the district court properly applied U.S.S.G. § 3B1.3. <u>See</u> 107 F.3d at 1220.

> Although, as we have already noted in Part II.B. above, Atkin was unsuccessful in getting the district judge to engage in an <u>ex parte</u> discussion of Sturman's case, the ostensible normalcy of his visit to chambers could well have precluded further inquiry from the district judge or any other person who might have been suspicious regarding Atkin's entry into chambers. The evidence strongly indicates that Atkin was well aware that he could use his position and skills as an attorney to conceal the true nature of his actions, and the evidence further supports a finding that he did precisely that. In November, 1991 Atkin sent a bogus letter to Reuben Sturman purporting to offer his services in pursuit of a claim of ineffective assistance of counsel. In the letter, Atkin stated that "[m]y fee to research and develop that will be $250,000." Although Atkin ultimately accepted a total of $550,000 from Reuben Sturman, he never filed any pleading, motion, or brief on the latter's behalf in any court, nor did he ever make any official court appearance, apart from the <u>ex parte</u> visit to the district judge on behalf of Reuben Sturman.

107 F.3d at 1220 (footnote omitted). The Sixth Circuit thus found that the district court's "finding that Atkin used his skill as a lawyer in a manner justifying application of § 3B1.3 [wa]s not clearly erroneous." 107 F.3d at 1220.

In <u>United States v. Kubick</u>, 205 F.3d 1117 (9th Cir. 1999), the United States Court of Appeals for the Ninth Circuit affirmed the district court's application of U.S.S.G. § 3B1.3. <u>See</u> 205 F.3d at 1125.  The Ninth Circuit stated: "As an attorney, Herron qualifies as 'specially skilled,' U.S.S.G. § 3B1.3, Application Note 3, and his license to practice law enabled him easily and inconspicuously to create shell corporations so that Kubick [-- another defendant --] could deceive the bankruptcy court by secreting assets."  205 F.3d at 1125.

## ANALYSIS

The Court has reviewed the PSR's factual findings with care.  There not being any objections to those, the Court will adopt those as its own.  The Court has also considered the PSR's sentencing guideline applications.  The Court overrules Ward's objection to the PSR's sentencing guideline applications.  As an attorney, <u>see</u> PSR ¶ 87, at 22, Ward possesses a special skill.  <u>See</u> U.S.S.G. § 3B1.3 app. n.4 ("'Special Skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing.  Examples would include pilots, lawyers, doctors, accountant, chemists, and demolition experts.").  This case does not present a situation where the defendant was an attorney and the defendant's profession was not a factor in the transaction.  <u>See</u> <u>United States v. Burt</u>, 134 F.3d at 998-99 ("For Defendant to be subject to the enhancement, the court must find two things: (1) Defendant possessed a special skill or a position of trust; and (2) Defendant used that skill or abused that position to significantly facilitate the commission or concealment of the offense.").  Randall thought that she was using at least some of Ward's services.  <u>See</u> PSR ¶¶ 8-9, at 4-5.  Ward's profession was a factor in Randall's decision to work with him and so it facilitated the commission of the offense.  <u>See</u> PSR ¶¶ 8-9, at 4-5.  Ward agreed to look over some of Randall's investments, and thus provided some legal and professional opinions.  <u>See</u> PSR ¶ 9, at 4.  Based on the information Ward provided Randall, and that he was an

attorney, Randall entrusted in him and his services and invested $500,000.00 with him.  See PSR ¶ 9, at 4-5.  It appears that some legal services were part of the investment.  See PSR ¶ 9, at 5.  Although Randall never paid a retainer, that Ward is an attorney facilitated the fraud and the abuse of the trust.  See PSR ¶ 9, at 4-5.  As in United States v. Atkin, where the Sixth Circuit affirmed the district court's application of U.S.S.G. § 3B1.3, because the client selected Atkin in an attempt to gain favorable treatment, because Atkin had a friendship with the district judge but also "because Atkin was a lawyer," and because Atkin was "well aware that he could use his position and skills as an attorney to conceal the true nature of his actions, and the evidence further supports a finding that he did precisely that," 107 F.3d at 1220, Randall invested $500,000.00 with Ward based on the legal and professional opinions he provided her and because he was an attorney, and Ward's legal services were part of the investment.  The Court thus finds that Ward's special skill significantly facilitated the commission of the offense.

Furthermore, Ward "use[d] a fiduciary or personal trust relationship to perpetrate the charged offense against the beneficiary of the trust."  United States v. Evans, 444 F. App'x at 453.  Ward and Randall met through Ghera.  Randall told Ghera that she wanted to diversify and was interested in real estate.  See PSR ¶ 8, at 4.  Ghera told Randall that he knew a lawyer, Ward, who could protect her interests in any investment.  See PSR ¶ 8, at 4.  Ghera set up a conference call between Ward and Randall.  See PSR ¶ 8, at 4.  Ward tried to get Randall interested in a trade program in the country of Spain, which he said would pay huge returns.  See PSR ¶ 8, at 4.  Randall asked Ward to review contracts and perform due diligence on a potential agreement she had with a merchant bank.  See PSR ¶ 9, at 4.  Ward reviewed the bank's proposals and told Randall he could provide her a better deal than the banks could.  See PSR ¶ 9, at 4.  Ward told Randall that the credit facility with which she was dealing was offering excessive interest and told her that deal was a scam, but

-13-

that she was safe with him.  See PSR ¶ 9, at 4.  Ward told Randall that, if she wired him $500,000.00

by a certain date, he would invest her money in a trade program returning fifteen percent a week and

establish three lines of credit for her.  See PSR ¶ 9, at 4-5.  Based on the information that Ward

provided to Randall, and that he was an attorney, Randall trusted in him and his services, and

invested $500,000.00 with him.  See PSR ¶ 9, at 4-5.  Ward did not invest the funds as agreed.

See PSR ¶ 7, at 4.  He instead diverted the $500,000.00 to himself and others.  See PSR ¶ 7, at 4.

There was never an investment and, therefore, no return.  See PSR ¶ 7, at 4.  Randall lost

$500,000.00.  See PSR ¶ 7, at 4.  As in United States v. Evans, where the Tenth Circuit stated:

"Defendants received the funds that they were to use to reimburse providers[;] [t]his placed

defendants in a personal trust relationship with the providers, and the defendants' demands for

kickbacks abused that trust and deprived the providers of reimbursement funds," 444 F. App'x at

453, Randall and Ward had a fiduciary trust relationship, because he reviewed her contracts and

gave her financial advice, and Ward used the relationship get Randall to invest $500,000.00 with

him, which he did not invest as agreed.  The Court thus finds that Ward abused a position of trust

in a manner that facilitated the commission of the offense.  See U.S.S.G. § 3B1.3; United States v.

Evans, 444 F. App'x at 451-53.  The Court therefore overrules Ward's objection and finds that the

PSR appropriately applied the guidelines.  Having overruled Ward's objection to the PSR's

sentencing guideline applications, the Court adopts those as its own.

The Court has also carefully considered the factors set forth in 18 U.S.C. § 3553(a).  After

a 3-level reduction for acceptance of responsibility, Ward's offense level is 20 and his criminal

history category is I, which establishes a guideline imprisonment range of 33 to 41 months.  Under

rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, however, the Court accepts the plea

agreement, which includes a specific sentence of 21 months, because the Court is satisfied that the

agreed-upon sentence varies for justifiable reasons.  The Court notes that Ward committed wire fraud as he used $500,000.00 of Randall's money for his own personal use and the use of others instead of investing it as promised.  Ward has been a member of the California bar for many years. He employed hundreds of people at the peril of his business at a time when the economy in California and the nation changed.  Ward is sixty-four years old.  He recently suffered a heart attack and underwent a bi-lateral bypass surgery.  He was also recently diagnosed with prostate cancer and underwent a prostatectomy.  Ward has been apologetic.  In the plea agreement, Ward agreed to pay restitution in the total amount of $500,000.00 plus applicable interest to Randall, before the expiration of one year after his release from prison.  He additionally agreed to pay Randall's civil attorneys $30,000.00 in satisfaction of her civil attorneys' fees before the expiration of one year after his release from prison.  Ward agreed to pay Randall $200,000.00 before the time of sentencing. At the sentencing hearing on July 1, 2011, Ward delivered a check for $200,000.00 to Randall.  This will ensure full restitution to Randall quicker than the law would otherwise require.

The Court has carefully considered the guidelines, but in arriving at its sentence, the Court has taken into account not only the guidelines but other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.   After careful consideration of the circumstances, the Court believes that the punishment that the guidelines set forth is not appropriate for this sort of offense or for this defendant.  Although he was acting to some degree as an attorney in the relationship, Ward was not operating primarily as an attorney in the relationship.  His professional career has been severely damaged, if not ruined.  After a lifetime of honorable service, he now will end his professional life in disgrace.  He has no prior criminal history and is unlikely to commit another crime of this nature or of this severity.  The Court does not believe a lengthy

sentence is needed to deter him further or to protect the public.  The guideline sentence is too punitive in this case, and over emphasizes deterrence and protecting the public.  The Court has then considered the kinds of sentences and ranges that the guidelines establish, and it agrees with the parties that a sentence of 21 months, with the other considerations that the parties have agreed to, such as restitution, reflects the seriousness of the offense, and is adequate and sufficient to promote respect for the law.  A sentence of 21 months provides a more just punishment, particularly because it provides some immediate restitution to Randall.  Given Ward's lack of criminal history in the past, a sentence of 21 months affords adequate deterrence.  The Court also believes this sentence is sufficient to protect the public.  The Court does not believe that there is any indication that Ward is going to repeat this conduct.  Because of some of the things the Court will require as part of supervised release, the Court believes that this sentence will provide Ward with the education, training, and care necessary to prevent this criminal activity from happening in the future.  The Court believes that this sentence fully and effectively reflects each of the factors embodied in 18 U.S.C. § 3553(a).  And while the Court's task as a trial court is not to come up with a reasonable sentence, but to balance the 18 U.S.C. § 3553(a) factors correctly, see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2).")(citation omitted),  the Court believes that this sentence is a more reasonable sentence than the guideline sentence.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that Defendant Paul Conrad Ward's requests in the Defendant's Sentencing Memorandum and Request for Approval of Plea Agreement Pursuant to F.R.C.P.

11(c)(1)(C), filed June 20, 2011 (Doc. 33), are granted in part.  Ward's objection to the enhancement pursuant to U.S.S.G. § 3B1.3 is overruled.  The Court will accept the plea agreement.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
George C. Karehe
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

J. Miles Hanisee
Albuquerque, New Mexico

      *Attorney for the Defendant*